Patrick J. Geile
Foley Freeman PLLC
953 S. Industry Way
P.O. Box 10
Meridian, Idaho 83680
Tel: 208-888-9111
Fax: 208-888-5130
pgeile@foleyfreeman.com
Idaho State Bar No. 6975

___

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATT WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| 24 HOUR FITNESS USA, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT**

Plaintiff, MATT WILSON ("Plaintiff"), by and through his attorneys, Foley Freeman PLLC, alleges the following against Defendant, 24 HOUR FITNESS USA, INC. ("Defendant"):

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Idaho Consumer Protection Act, Idaho Code § 48-601 ("ICPA").

3. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

4. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

## JURISDICTION AND VENUE

5. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

6. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7. This court has supplemental jurisdiction over the state law claim alleged herein pursuant to 28 U.S.C. § 1367(a) because it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

8. Venue and personal jurisdiction in this district are proper because Defendant does or transacts business within this district, and a material portion of the events at issue occurred in this district.

## PARTIES

9. Plaintiff is a natural person residing in the City of Boise, Ada County, State of Idaho.

10. Plaintiff is a "person" as that term is defined by the ICPA.

11. Defendant is a "person" as that term is defined by the ICPA.

12. Defendant is engaged in "trade" and "commerce" in Idaho as those terms are defined by the ICPA.

13. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

14. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

15. Defendant is a California business corporation with its principal office located in the City of San Ramon, Contra Costa County, State of California.

16. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

17. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

18. Defendant is attempting to collect a consumer debt from Plaintiff, allegedly arising from gym membership dues.

19. The alleged debt owed by Plaintiff arises from transactions for personal, family, and household purposes.

20. In or around May 2019, Defendant began calling Plaintiff on Plaintiff's cellular telephone, at 503-260-7087, in an attempt to collect the alleged debt.

21. Defendant calls Plaintiff from several telephone numbers, including 855-283-3957, which is one of Defendant's many telephone numbers.

22. On or about May 24, 2019, Plaintiff spoke to one of Defendant's collectors and told Defendant to stop calling Plaintiff.

23. Despite Plaintiff's request that Defendant stop calling him, Defendant continued to call Plaintiff unabated in an attempt to collect a debt allegedly owed by Plaintiff.

24. Defendant calls Plaintiff at an annoying and harassing rate.

25. When Plaintiff answered Defendant's calls, he was greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

26. Plaintiff also received "abandoned calls" from Defendant.

27. Abandoned calls occur when Defendant's automated system calls more telephone numbers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the automatic telephone dialing system is unable to transfer the call it dialed to a human being, and the call is dropped.

28. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

29. None of the calls Defendant made to Plaintiff were for an emergency purpose.

30. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

31. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

32. If Defendant had prior express consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

33. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

34. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

35. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the

capacity to store telephone numbers.

36. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

42. The dead air that Plaintiff experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human

being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

43. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;
    b. Electronically intruding upon Plaintiff's seclusion;
    c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
    d. Depleting and reducing the life of Plaintiff's cellular telephone battery;
    e. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
    f. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

44. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice without prior express consent and/or revocation of such consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, MATT WILSON, respectfully requests judgment be entered against Defendant, 24 HOUR FITNESS USA, INC., for the following:

45. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

47. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

48. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE
## IDAHO CONSUMER PROTECTION ACT

49. Plaintiff repeats and realleges paragraphs 1-43 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

50. "[T]he collection of a debt arising out of a sale of goods or services is subject to the provisions of the [ICPA.]" *In re W. Acceptance Corp., Inc.*, 788 P.2d 214, 216 (1990).

51. Defendant violated the ICPA when it called Plaintiff at an annoying and harassing rate and even continued to do so after Plaintiff told Defendant to stop calling Plaintiff.

52. Plaintiff suffered an ascertainable loss as a result of Defendant's employment of unlawful methods, acts, or practices in connection with its attempts to collect an alleged debt from Plaintiff.

WHEREFORE, Plaintiff, MATT WILSON, respectfully requests judgment be entered against Defendant, 24 HOUR FITNESS USA, INC., for the following:

53. Statutory damages of $1,000.00 pursuant to the Idaho Consumer Protection Act, Idaho Code § 48-608(1);

54. Costs and reasonable attorneys' fees pursuant to the Idaho Consumer Protection Act, Idaho Code § 48-608(5);  and

55. Any other relief that this Honorable Court deems appropriate.

                                                  Respectfully submitted,
                                                  FOLEY FREEMAN PLLC

February 18, 2020            By: /s/ Patrick J. Geile
                                                Patrick J. Geile
                                                953 S. Industry Way
                                                P.O. Box 10
                                                Meridian, Idaho 83680
                                                Tel: 208-888-9111
                                                Fax: 208-888-5130
                                                pgeile@foleyfreeman.com
                                                Idaho State Bar No. 6975